# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| GEORGIA A. GEIMAUSADDLE, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. CIV-17-0203-SM |
| COMMISSIONER OF SOCIAL SECURITY ADMINISTRATION, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Georgia A. Geimausaddle (Plaintiff) brings this action for judicial review of the Defendant Acting Commissioner of Social Security's (Commissioner) final decision she was not "disabled" under the terms of the Social Security Act. *See* 42 U.S.C. §§ 405(g), 423(d)(1)(A). The parties have consented under 28 U.S.C. § 636(c) to proceed before a United States Magistrate Judge. Docs. 14, 19.[1] Following a careful review of the parties' briefs, the administrative record (AR), and the relevant authority, the court affirms the Commissioner's decision.

---

[1]  Citations to the parties' pleadings and attached exhibits will refer to this Court's CM/ECF pagination. Citation to the state court records will refer to the original pagination.

I.   **Administrative determination.**

   A.   **Disability standard.**

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "This twelve-month duration requirement applies to the claimant's inability to engage in any substantial gainful activity, and not just his underlying impairment." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Barnhart v. Walton*, 535 U.S. 212, 218-19 (2002)).

   B.   **Burden of proof.**

Plaintiff "bears the burden of establishing a disability" and of "ma[king] a prima facie showing that he can no longer engage in his prior work activity." *Turner v. Heckler*, 754 F.2d 326, 328 (10th Cir. 1985). If Plaintiff makes that prima facie showing, the burden of proof then shifts to the Commissioner to show Plaintiff "retains the capacity to perform an alternative work activity and that this specific type of job exists in the national economy." *Id.* (citation omitted).

   C.   **Relevant findings.**

The ALJ assigned to Plaintiff's case applied the standard regulatory analysis and concluded Plaintiff had not met her burden of proof. AR 22-33;

*see* 20 C.F.R. §§ 404.1520(a)(4) & 416.920(a)(4); *see also Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step analysis). Specifically, the ALJ found Plaintiff:

(1) was severely impaired, first, by degenerative disc disease, second, by degenerative joint disease, third, by hypertension, fourth, by anxiety disorder, and fifth, by affective disorder.

(2) did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment;

(3) had the residual functional capacity (RFC)[2] to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b) with additional limitations;

(4) could perform her past relevant work as a weigher operator;

(5) could perform jobs that exist in significant numbers in the national economy, such as small product assembler, and inspector packer; and so,

(6) had not been under a disability, as defined in the Social Security Act, from June 7, 2012 through July 29, 2015.

AR 23-32.

### D. Appeals Council action.

The Social Security Administration's (SSA) Appeals Council reviewed Plaintiff's additional evidence, and determined it, in consideration with the entire record, provided no basis for changing the ALJ's decision. *Id.* at 2; *see*

---

[2] Residual functional capacity "is the most [a claimant] can still do despite [a claimant's] limitations." 20 C.F.R. §§ 404.1545(a)(1); 416.945(a)(1).

*also id.* at 1-6. The ALJ's decision is thus the Commissioner's final decision. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. Judicial review of the Commissioner's final decision.

### A. Review standards.

A court reviews the Commissioner's final "decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014) (internal quotation marks omitted). Substantial evidence is "more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084. A decision is not based on substantial evidence "if it is overwhelmed by other evidence in the record." *Wall*, 561 F.3d at 1052 (internal quotation marks omitted). The court "cannot reweigh the evidence or substitute [its] judgment for that of the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

Further, "if the ALJ failed to apply the correct legal test, there is a ground for reversal apart from a lack of substantial evidence." *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). However, the court "must 'exercise common sense' in reviewing an ALJ's decision and must not 'insist on technical perfection.'" *Jones v. Colvin*, 514 F. App'x 813, 823 (10th Cir. 2013) (quoting *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (2012)). The ALJ's decision must be evaluated "based solely on the reasons stated in the decision." *Robinson v.*

4

*Barnhart*, 366 F.3d 1078, 1084 (10th Cir. 2004). A "post hoc rationale is improper because it usurps the agency's function of weighing and balancing the evidence in the first instance." *Carpenter v. Astrue*, 537 F.3d 1264, 1267 (10th Cir. 2008).

### B. Plaintiff's claims of error.

Plaintiff argues the ALJ committed legal error when he (1) "improperly rejected the opinions of her treating physicians"; and (2) given those opinions, the ALJ's step-four and step-five findings lacked substantial evidence. Doc. 20, at 9.

### C. Whether the ALJ erred in applying the treating-physician rule.

#### 1. Legal standards.

Through its governing regulations, the SSA tells claimants that, "[g]enerally, we give more weight to opinions from your treating sources . . . ." 20 C.F.R. §§ 404.1527(c)(2) & 416.927(c)(2). It explains this is so

> since these sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations such as consultative examinations or brief hospitalizations.

*Id*.

Binding court precedent underscores the significance of treating source opinion evidence, holding that when an ALJ "evaluat[es] the medical opinions

5

of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser*, 638 F.3d at 1330. At the first step, the ALJ must determine if the opinion "is well-supported by medically acceptable clinical or laboratory diagnostic techniques and is not inconsistent with other substantial evidence in the record." *Id.* "If the opinion is deficient in either of these respects, it is not to be given controlling weight." *Id.* If the ALJ finds the opinion is not entitled to controlling weight, he must then proceed to the second step of the inquiry to "make clear how much weight the opinion is being given (including whether it is being rejected outright) and give good reasons, tied to the factors specified in the cited regulations for this particular purpose, for the weight assigned." *Id.* These factors are:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Id.* at 1331 (quotation omitted).

So long as the ALJ provides a well-reasoned discussion, his failure to "explicitly discuss" all the factors "does not prevent [the] court from according his decision meaningful review." *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007*).*

### 2. The treating physicians' opinions.

#### a. Dr. Richard S. Harris, D.O.'s opinion.

The ALJ noted that, in a June 2013 Documentation of Disability form, Dr. Harris diagnosed Plaintiff with "DJD LS Spine & Spondylosis & chronic back pain, hypertension." AR 385. Dr. Harris noted her "Fair" prognosis, recommended physical therapy, limited her to no lifting, no prolonged standing or walking, and indicated it was "unknown" whether the condition could be improved through treatment. *Id.* In November 2012, Dr. Harris limited her to "no lifting over 5 pds," and again recommended physical therapy. *Id.* at 389.

With respect to Dr. Harris' treatment of Plaintiff, the ALJ noted:

> The opinion of Dr. Harris is given little weight as it is not consistent with the medical evidence. Dr. Harris opined the claimant is not able to do any lifting or stand for prolonged periods of time. The current medical evidence does not reflect this degree of severity.

*Id.* at 30.

Undoubtedly, the ALJ neglected to state whether Dr. Harris' opinion was entitled to controlling weight before assigning it a relative weight. It appears the ALJ simply jumped to the assessment of relative weight. Doing so constitutes legal error, but if the reasons articulated by the ALJ are sufficient for determining that Dr. Harris' opinion should not be given controlling weight, then the error is harmless. *Mays*, 739 F.3d at 575 ("Ms. Mays argues that the ALJ did not expressly state whether he had given Dr. Chorley's opinion

7

'controlling weight.' But the ALJ implicitly declined to give the opinion controlling weight. Because we can tell from the decision that the ALJ declined to give controlling weight to Dr. Chorley's opinion, we will not reverse on this ground."); *see also Causey v. Barnhart*, 109 F. App'x 375, 378 (10th Cir. 2004) (unpublished) ("Implicit in the ALJ's decision is a finding that Dr. Waldrop's opinion . . . is not entitled to controlling weight."); *see also Andersen v. Astrue*, 319 F. App'x 712, 721 (10th Cir. 2009) (unpublished) ("It is apparent that the ALJ concluded that these opinions were not entitled to controlling weight. Although ordinarily the ALJ should have made explicit findings to this effect . . . we are not troubled by the substance of the ALJ's determination."). The court will accordingly not reverse the ALJ for failing to discuss whether Dr. Harris' opinion was entitled to controlling weight, as his decision to ascribe the opinion "little weight" shows that he implicitly declined to give it controlling weight.

The ALJ clearly declined to give Dr. Harris' opinion controlling weight. The ALJ found the opinion inconsistent with the current medical evidence. AR 30. The ALJ summarized the medical evidence, including Dr. Harris' treatment records, and also summarized relevant portions of Plaintiff's testimony and statements in the record concerning her usual activities and functional limitations. *Id.* at 27-31. Plaintiff provides no specific instance in which the ALJ misinterpreted the treatment records, nor has she pointed to

8

specific medical evidence in the record contradicting the ALJ's factual finding that the "current medical evidence" differs from the November 2012 and June 2013 timeframe. The ALJ adequately considered the medical record and provided adequate reasons for giving Dr. Harris' opinion little weight. *See Endriss v. Astrue*, 506 F. App'x 772, 777 (10th Cir. 2012) ("The ALJ set forth a summary of the relevant objective medical evidence earlier in his decision and he is not required to continue to recite the same evidence again in rejecting [the physician's] opinion.").

### b. Dr. Melinda Powers, D.O.'s opinion.

The ALJ noted Plaintiff's history of visits with Dr. Powers. AR 28-30. Dr. Powers saw Plaintiff periodically from January 2014 through June 2015. *Id.* In January 2014, Plaintiff's chief complaint to Dr. Powers was back pain and that a previously fractured right wrist was still painful. *Id.* at 571. She had swollen finger joints and decreased range of motion. *Id.* at 28. Dr. Powers assessed her with "metacarpal fracture, DJD fingers and back." *Id.* at 569. Plaintiff reported her activity level as "Active," meaning 2.5-to-5 hours of weekly activity. *Id.* at 28.

The ALJ noted January 2014 hand x-rays showed "juxta articular osteoporosis and soft tissue swelling" and "[n]o acute findings." *Id.* at 542, 29. He also noted "arthritic joints noted with ulnar deviation noted in right hand." *Id.* Plaintiff received an injection of Depo Medrol. *Id.* at 545. Her gait was

normal and her strength was 5/5. *Id.* at 28. Plaintiff's discharge condition was stable, and she was to follow up with her increased symptoms. *Id.* at 544. Dr. Powers concluded Plaintiff's arthritis "is severe and limited her ability to work at this time." *Id.* at 547, 29.

On March 31, 2014, Dr. Powers assessed Plaintiff with "DJD of lumbar spine/with spondylosis." *Id.* at 542. The ALJ noted Plaintiff "reported her wrists limited her ability to use her hands and arms well. . . ." *Id.* at 28. Dr. Powers assessed a normal gait and strength of 5/5. *Id.* at 29.

The ALJ considered Plaintiff's March 6, 2015 visit to Dr. Powers, where Plaintiff complained of left shoulder pain that had lasted for a month. *Id.* Her strength was 5/5, her gait normal, and she had adequate strength in her left arm, with "crepitus with range of motion." *Id.* She also had muscle tension around the shoulder and scapula. Her shoulder x-ray was normal, and Dr. Powers diagnosed left shoulder pain, osteoarthritis of acromioclavicular joint and essential hypertension. *Id.* He prescribed Prednisone for five days and Tramadol for pain, along with Plaintiff's previous medications. *Id.* Plaintiff's activity level remained "active." *Id.*

In June 2015, after falling ceiling material injured Plaintiff the previous month, she visited Dr. Powers. *Id.* Plaintiff requested the discontinuation of her "pain medication agreement" so she might receive pain medication. *Id.* Dr. Powers noted spasm in the lumbar back and some tenderness "to palpitation at

the right T-L junction." *Id.* "All other examinations were within normal limits." *Id.* Dr. Powers assessed "acute thoracic pain and headache disorder" and prescribed Tylenol with codeine every six hours for pain. *Id.*

The ALJ noted Plaintiff returned on June 15, 2015 for the results of her CT scan and x-rays. *Id.* "[S]he was able to complete her activities of daily living and she had no new complaints." *Id.* at 29-30. The CT scan showed "no evidence for acute intracranial abnormality . . . ." *Id.* at 30. The x-ray "showed mild anterior compression deformity at the T12 vertebra, age indeterminate and mild spondylosis." *Id.* at 30, 647. Plaintiff received a diagnosis of "arthralgia and mechanical back pain," and was recommended various stretches, to continue current medications, and to use moist heat. *Id.* at 30, 648.

With respect to Dr. Powers' January 2014 opinion, the ALJ gave it little weight, finding:

> The opinion of Dr. Powers is also given little weight. Although the claimant testified to some issues with her hands, Dr. Powers provided extreme limitations that were vague and not supported by the *medical evidence including x-rays*.

*Id.* at 30 (emphasis added). Again, the ALJ failed to address whether he ascribed controlling weight to the opinion, jumping instead to relative weight. As above, any error is harmless. *Mays*, 739 F.3d at 575.

11

The Commissioner argues Dr. Powers' assessment of an inability to work "at this time," does not support an inability to work for twelve months. Doc. 21, at 5-6; see 20 C.F.R. §§ 404.1509, 416.909. Plaintiff makes no argument otherwise, apart from arguing the ALJ should have included some sort of "right-hand [manipulative] limitations," though Dr. Powers prescribed nothing specific. *See* Doc. 20, at 19; AR 30.

The ALJ's consideration of Dr. Powers' opinion, though terse, is supported by substantial evidence. *See, e.g., Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014) ("The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).") (quoting SSR 96-8p, 1996 WL 374184, at *7 (July 2, 1996)). The Court declines to reweigh the ALJ's determination that substantial evidence existed to contradict the opinions of these medical professionals. *Harper v. Colvin*, 528 F. App'x 887, 892 (10th Cir. 2013).

And, the ALJ adequately reviewed the "medical evidence" in the record, "including x-rays." AR 30; *see id.* at 29-30; *Endriss*, 506 F. App'x at 777; *Pisciotta v. Astrue*, 500 F.3d 1074, 1078 (10th Cir. 2007) (an ALJ may discount medical evidence "if it is internally inconsistent or inconsistent with other evidence") (citations omitted); *see also* 20 C.F.R. §§ 404.1527(c)(3) ("[M]ore weight" will be given to medical source opinions that are supported by relevant

evidence.) & 416.927(c)(3) (same)); *cf. Armijo v. Astrue*, 385 F. App'x 789, 795 (10th Cir. 2010) (holding that ALJ's implicit determination that treating physician's opinion was not entitled to controlling weight was supported by substantial evidence, noting the ALJ pointed out "particular conflicts" between the opinion and "specific record evidence" and "internal inconsistencies" in the opinion); *Tarpley v. Colvin*, 601 F. App'x 641, 643-44 (10th Cir. 2015) (where the ALJ failed to state whether he gave treating physician's opinion controlling weight, stating "any imaginable oversight on this score is clearly harmless because the ALJ's ruling unambiguously demonstrates that he declined to give the opinions controlling weight and . . . he had substantial evidence to support that decision"). Accordingly, the Court finds no reversible error in connection with Plaintiff's argument on the issue of the weight the ALJ gave to the medical opinions in the record.

Plaintiff briefly challenges the "great weight" the ALJ gave to the State agency medical consultants' opinions, and the ALJ's application of the correct legal standards in doing so. Doc. 20, at 22-23. Substantial evidence supports the ALJ's analysis. The ALJ based his allocation of great weight on a comprehensive review of the record and, as the Commissioner notes, it was consistent with the objective medical evidence from Dr. Powers. Doc. 21, at 10 (citing AR 569, 556, 542, 634). Even when considering the stricter standard set

forth in SSR 96-6p, the Court cannot find the ALJ improperly weighed the State agency medical consultants' opinions.

### 3. Substantial evidence supports the ALJ's step-four and step-five conclusions.

Finally, Plaintiff challenges the ALJ's step-four and step-five findings. Plaintiff argues that at best, she should be limited to sedentary work, which, given her age, requires a finding of disabled. Doc. 20, at 23-24. Because substantial evidence supports the ALJ's RFC assessment and the ALJ's questions to the vocational expert mirrored the RFC, substantial evidence also supports the ALJ's step-four and step-five conclusions.

## III. Conclusion.

The court affirms the Commissioner's decision.

ENTERED this 5th day of December, 2017.

_____
SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE